UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NICHOLE ELIZABETH BUCK,

                Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

**DECISION AND ORDER**
14-CV-216S

---

1. Plaintiff Nichole Elizabeth Buck challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since February 1, 2009 due to right ear deafness, scoliosis, bipolar disorder, and bulging discs. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to payments of Security Disability Insurance ("SSD") benefits and Supplemental Security Income benefits ("SSI") under the Act.

2. On May 3, 2011, Plaintiff submitted an application for SSD and SSI benefits. Her application was denied on July 12, 2011. Pursuant to Plaintiff's request, on August 23, 2011, an administrative hearing was held before ALJ Robert C. Dorf through a videoconference with Plaintiff and her attorney, which was held on November 16, 2012. The ALJ considered the case *de novo*, and on November 28, 2012, denied Plaintiff's application for benefits and issued a decision finding that Plaintiff was not disabled. On February 5, 2014, the Appeals Council denied Plaintiff's request for

review. Plaintiff filed the current civil action on March 28, 2014, challenging Defendant's final decision.[1]

3. On September 18, 2014, Plaintiff filed a Motion for Judgment on the Pleadings (Docket No. 12). On December 5, 2014, the Government filed a Cross Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket No. 17). Plaintiff filed a response on December 24, 2014 (Docket No. 18). This Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is evidence that amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

---

[1] The ALJ's November 28, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.   While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.   In the present case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since February 1, 2009, the alleged onset date of disability (R. at 21); (2) Plaintiff had the severe impairments as defined within the Social Security Act: "degenerative disc disease, scoliosis, and major depressive disorder" (R. at 21); (3) Plaintiff does not have an impairment or combination that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (R. at 21-22); (4) Plaintiff had a residual functional capacity ("RFC") that included the performance of "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she cannot perform

complex tasks," (R. at 22); and (5) Plaintiff could perform her past relevant work as a cashier. (R. at 25). Thus, the ALJ found that Plaintiff was not disabled or entitled to benefits. (R. at 25).

10.    Plaintiff challenges the ALJ's decision. Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's severe impairment of major depressive disorder, resulting in a finding not supported by substantial evidence because: (1) the ALJ failed to account for moderate limitations opined by Dr. Ryan, including his then diagnosis of bipolar disorder, when the ALJ determined Plaintiff's RFC, and (2) the ALJ improperly cut off testimony as to the functional effects of Plaintiff's mental illness on her previous employment, specifically as a cashier.

11.    Plaintiff argues the mental portion of the ALJ's RFC finding is not based upon substantial evidence. She argues that, although the ALJ said that he gave "significant weight" to Dr. Ryan's opinion, the ALJ failed to credit the limitations found by Dr. Ryan. Specifically, Plaintiff asserts that the ALJ should have considered whether Plaintiff's bipolar disorder constituted a severe impairment, as well as Dr. Ryan's additional findings including that Plaintiff's ability to relate with others and deal with stress were moderately impaired. Thus, Plaintiff argues the mental portion of the ALJ's RFC finding is not based upon substantial evidence.

An ALJ is required to consider all pertinent medical evidence in the record regarding a plaintiff's impairments. See Shaw v. Chater, 221 F.3d 125, 135 (2d Cir. 2000). Further, an ALJ must address all relevant evidence regardless if it supports his or her conclusion. See McClain v. Barnhart, 299 F.Supp.2d 309, 327 (S.D.N.Y. 2004).

Moreover, it is the claimant's burden to produce medical evidence in support of his or her claim. See 42 U.S.C. § 423(d)(5)(A).

An ALJ's RFC finding is based on substantial evidence from the record, if it complies with the Commissioner's regulations and rulings, and the ALJ discussed all relevant medical evidence. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Furthermore, an ALJ is free to choose between properly submitted medical opinions in the record. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). An ALJ's RFC assessment consists of "a finding of the range of tasks [a claimant] is capable of performing notwithstanding the impairments at issue." See Amrod v. Comm'r of Social Security, 2010 WL 55934, *17 (N.D.N.Y. 2010) citing 20 C.F.R. §§ 404.1545(a), 416.945(a).

In the present case, the ALJ is not required to adopt all of the moderate limitations detailed by Dr. Ryan. As the law states, the ALJ need not incorporate every observation made by a particular examining physician, as long as there is additional evidence provided by a separate treating physician. But, a consultative examiner's opinion, such as Dr. Ryan's, can constitute evidence an ALJ may use in evaluating a claimant's RFC. See Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013). Moreover, the Second Circuit has held that the opinion of a non-examining source, including a State agency physician, can constitute evidence to support the ALJ's determination of the Plaintiff's RFC. See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

As the record indicates, consultative psychologist Dr. Ryan found that Plaintiff was suffering from bipolar disorder, and her ability to make decisions could be moderately impaired when Plaintiff attempted to communicate with others and deal with

stress. (R. at 273-76). However, Dr. Ryan further found that she was still capable of following and understanding directions and instructions, performing simple tasks, maintaining concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks. (R. at 273-76). Dr. Ryan's medical opinion is supported by evidence of a mental status examination of Plaintiff. Within the examination, Plaintiff was calm and cooperative. (R. at 274). She was able to relate and had adequate social skills. (R. at 274). Plaintiff's mood was neutral and her sensorium was clear. (R. at 274). During the examination, Plaintiff told Dr. Ryan she was able to dress, bathe, and groom herself. (R. at 275). Thus, Dr. Ryan's opinion of Plaintiff, including her ability to perform simple tasks, be attentive, and maintain a regular schedule, is consistent with the ability to perform basic mental requirements of work. (R. at 275). See 20 C.F.R. §§ 404.1521, 416.921.

The fact that the ALJ did not separately evaluate whether Plaintiff's bipolar disorder is a severe impairment does not render the ALJ's determination of Plaintiff's RFC erroneous. Any failure to list cognitive limitations as a severe impairment is rendered harmless by the ALJ's subsequent consideration of mental limitations in the RFC assessment. See Ives v. Colvin, No. 5:12-cv-471, 2013 WL 2120273 *2 (N.D.N.Y. May 15, 2013) (determining no basis to remand matter based on [claimant's] mental impairments as they were considered in the ALJ's RFC); see aslo Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010) (holding remand is not necessary when an ALJ's examination of the same evidence would unlikely change the RFC determination).

As detailed, the ALJ discussed all relevant medical evidence. This is evidenced by Dr. Ryan's diagnosis of Plaintiff in battling with bipolar disorder, yet his determination

7

that Plaintiff still possesses the capability to perform work-related activities. (R. at 275). Furthermore, reviewing the record again would not change this determination by the ALJ as the same medical evidence would be analyzed, rendering the same determination by the ALJ. Thus, Plaintiff's argument that the mental portion of the ALJ's RFC finding is not based upon substantial evidence must be rejected.

Moreover, in making his determination, the ALJ reviewed Dr. Andrews' examination of the Plaintiff. The ALJ took into account Dr. Andrews' opinion regarding the Plaintiff's health condition. On July 7, 2011, Dr. Andrews reviewed the record and observed that, although Plaintiff was suffering from bipolar disorder, Plaintiff had no restrictions in activities of daily living and never experienced a moment or moments of deterioration. (R. at 284, 291). Neither Dr. Ryan nor Dr. Andrews found significant limitations in Plaintiff's RFC due to Plaintiff's bipolar disorder.

With Dr. Andrews' examination of Plaintiff, as detailed above, along with Dr. Ryan's diagnosis of Plaintiff's mental health, properly indicates that Plaintiff's bipolar disorder does not interfere with her ability to perform past relevant work. (R. at 275). As the ALJ considered Dr. Ryan's opinion regarding Plaintiff, in connection with the evidence provided by Dr. Andrews, the ALJ adequately evaluated Dr. Ryan's opinion. Moreover, Plaintiff has failed to demonstrate any mental functional limitations beyond the limitations already found by the ALJ. Thus, Plaintiff's argument must be rejected.

12. Plaintiff's final challenge is that the ALJ improperly cut off testimony after only two questions had been answered by Plaintiff. Plaintiff argues no testimony was heard as to the functional effects of Plaintiff's mental illness on her previous employment. Plaintiff argues this abrupt line of questioning by the ALJ allowed the ALJ

to make a determination that Plaintiff could perform her past relevant work as a cashier based on selective evidence.

Plaintiff has the burden of proving that she cannot perform her former type of work. See 42 U.S.C. § 423(d)(2)(A); see also Melville v. Apfel, 198 F.2d, 45, 51 (2d. Cir. 1999).

As detailed below, Plaintiff's argument that no testimony was heard as to the functional effects of her mental illness on her previous employment must be rejected for the testimony, in combination with the record medical evidence, indicates that the ALJ made an informed decision on Plaintiff's ability to perform past relevant work and Plaintiff's RFC.

Plaintiff's testimony indicated that she took care of her children, drove approximately 100 miles per week, and was capable of going on hikes and walks. (R. at 56). When the ALJ asked Plaintiff why she stopped working, Plaintiff stated, "I was having problems with the customers and my boss at the time." (R. at 50). Further, the ALJ asked Plaintiff to explain why she was able to take care of her children, but she was unable to complete her past work as a cashier. (R. at 56). Plaintiff responded by stating that she only took care of her children because she had to take care of her children. (R. at 56). She indicated that she only performed services for her children because there was no one else available to help. (R. at 56). After such questioning, the ALJ asked Plaintiff's attorney if he had any questions for Plaintiff. (R. at 56). Plaintiff's attorney asked Plaintiff how she felt at her last job and how she interacted with coworkers. Plaintiff stated:

> If they had a negative attitude, I would get into a negative attitude as well. And it would get to the point where I was lashing out at them or yelling at

> them and it was just like back and forth and it made it a bad working experience. And people were just like always irritating, so I would constantly just not be in a productive mood.

(R. at 58). Finally, Plaintiff's attorney asked her if she ever left in the middle of the day during a shift and she stated that she had. (R. at 58-59). Before another question was asked, the ALJ stated, "…counsel, I think we've exhausted her issue here." (R. at 59). Plaintiff's counselor did not object. (R. at 59).

As shown by the Plaintiff's testimony, Plaintiff was given ample opportunity to detail how and why she was disabled, and why she was unable to perform her past relevant work as a cashier. (R. at 44-45, 56, 58). Plaintiff was provided the opportunity to explain why her mental health was so poor she was unable to perform her past relevant work. Yet, Plaintiff did not provide any information. She detailed how she was the only person able to take care of her children and how she felt annoyed by her coworkers. Overall Plaintiff was given the chance to explain why her mental condition interferes with her working as a cashier, but she did not indicate any further information. Thus, Plaintiff's argument that the ALJ was hostile and did not allow Plaintiff to detail why her mental condition prevents her from performing her past relevant work as a cashier, must be rejected.

13. After carefully examining the administrative record, this Court finds that substantial evidence supports ALJ Dorf's decision, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that ALJ Dorf thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the

Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: July 7, 2015
       Buffalo, New York

                            /s/William M. Skretny
                            WILLIAM M. SKRETNY
                            United States District Court